**Joseph J. Haddad, OSB No. 002696**
joseph@jjh-law.com
**JJH LAW, P.C.**
1640 NW Irving Street
Portland, OR 97209
Phone: (503) 552-1467
Fax: (503) 552-1468

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CONNEXUS INDUSTRIES, INC.**, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>**TRACY COPE**, an Oregon individual,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Violations of the Economic Espionage Act, 18 U.S.C. § 1831, as amended by the Defend Trade Secrets Act, Breach of Employee Handbook and Obligations, Breach of Duty of Loyalty, Conversion, Injunctive Relief, Declaratory Relief)<br><br>**Prayer for Relief: $2,300,000.00**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Connexus Industries, Inc. ("Plaintiff" or "Connexus"), by and through its counsel of record Joseph J. Haddad and JJH Law, P.C. allege the following against Defendant Tracy Cope ("Defendant" or "Cope"):

## **INTRODUCTION**

1. Connexus brings this action for economic damages, injunctive relief, declaratory relief, costs, and attorney's fees to redress injuries done to it by Defendant Tracy Cope. Cope resigned from Connexus in July 2022 and began employment at Pacific Industries, Inc. ("Pacific Industries").

2. Cope improperly and in contravention of both statutory and contractual authority misappropriated Connexus' confidential information and brought it with her to her new employer. Cope supplied Pacific Industries with trade secrets and proprietary information, including Connexus' customer lists and contact information; vendor list and contact information; product manufacturing information; customer and other sales pricing; copies of template documents; historical financial, customer, and booking data; and customer and booking leads.

3. Connexus takes the development and protection of its confidential information very seriously. It warns of protections of such information in its employee handbook and maintains safeguards with respect to its confidential data. As outlined below, this is because the foundation of Connexus' business is confidential information regarding its business, clients, and vendors.

4. Despite Cope's obligations, Cope decided to take information, either independently or with encouragement, to Pacific Industries. Given Cope ignored her obligations and Connexus' policy, Connexus has no alternative to bring a lawsuit to protect its information and to be compensated for its damages. And to the extent Connexus discovers a pattern of Pacific Industries encouraging Cope to use and/or bring confidential information with them, Connexus reserves the right to name Connexus as a defendant at a later date.

## PARTIES

5. Plaintiff Connexus Industries, Inc. is a Delaware Corporation with its United States headquarters at 9525 SW Commerce Cir, Wilsonville, OR 97070.

6. Defendant Tracy Cope was Procurement Manager at Connexus until her resignation on July 8, 2022. On information and belief, Cope is a resident of the State of Oregon.

## JURISDICTION

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because Connexus asserts claims arising under law of the United States.

8. Jurisdiction over Connexus' state law claims is proper in this Court under 28 U.S.C. § 1367 because those claims are so related to Connexus' federal claims that they form part of the same case or controversy.

9. This Court has jurisdiction over Cope because Connexus' claims arise out of Cope's employment at Connexus' headquarters in Wilsonville, Oregon.

10. Venue is proper in this Court under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Connexus' claims occurred in this District.

## MATERIAL FACTS

### I. Connexus is a Leading Manufacturer of Equipment and Parts for the Lumber Industry Due to the Competitive Advantage Offered by Its Independently Derived Information

#### a. Connexus' Business

11. Connexus has nearly one hundred (100) years of industry experience and expertise supplying the lumber and other industries with equipment and parts. It is a provider of industrial chain and manufacturing solutions, including lasers, and metal detection. Connexus' global headquarters is located at 27427 Gloucester Way, Langley B.C., Canada V4W 4A1.

12. Connexus was created in 2013 after a consolidation of four companies, Lacey Harmer, Inc., Viking Chains, I'Anco and Tectronix Systems. Connexus' history stems back to the late 1920s when the oldest company, I'Anco, was founded in 1927 as a pattern shop and began producing equipment for the logging industry in 1935. The I'Anco cast alloy chains are still preferred more than 80 years later. Lacey Harmer's roots can be traced back to 1935 when it started supplying equipment to the logging industry. During the early 1980s Lacey Harmer designed and introduced the world to Sharp Top Chain with the Summit product range, still the most respected chain in the lumber industry.

Viking Chains started in the early 1990s supplying good quality chains to various industries including Wastewater Treatment. Its presence can still be seen today where it is specified by most end-users in North America who require good quality and reliable non-metallic chains.

Lazer Blazer was introduced to the North American market and became the

industrial guided line lasers market leader within three years. The range was expanded with Laharco, Lasalign and Lazer Tracker since then. The lasers are used from the lumber industry to the food industry to provide cut lines for the optimum processing of raw materials. Metal detectors are essential to the lumber industry. The industry relies on the MetalShark metal detectors to protect equipment, production, and the safety of operating staff.

### b. The Importance of Information to Connexus

13. One key market advantage is information regarding Connexus' actual and prospective customers, including information pertaining to which customers are shipping, what products those customers are shipping, customer volume, customer pricing and quotes, customer timing, and other similar customer-specific information. Connexus has accumulated and maintained customer information through participation in the marketplace—that is, by servicing clients, pitching (successfully and unsuccessfully) prospective clients, losing clients and then winning them back—and maintaining information relating to these activities in an internal database accessible to some Connexus employees. This decades-long process has provided Connexus with a wealth of valuable business knowledge. Given the enormous time, effort, and expense spent preparing this information, this information is invaluable to any competitor, as it would permit them to quickly identify prospective targets without investing the resources necessary to do so. Moreover, because this information allows Connexus to more efficiently and effectively analyze customer needs, it would be invaluable to any competitor.

14. This customer-specific information also includes Connexus' confidential list of customers, as well as those customers' individualized supply chain information, such as factory locations and contacts, customer open order reports, customer product lists and pricing information, consumption reports, and savings reports. Connexus derived this information through decades of effort and would be impossible to replicate without the expenditure of substantial resources. As a consequence, these customer lists (and the customer-specific information contained in them) are highly valuable to Connexus and would be invaluable to any

competitor as it would permit that competitor to quickly identify prospective targets without the requisite investment of time, energy, and cost.

### c. Connexus' Efforts to Protect Business Information

15. Because its information and proprietary processes are central to Connexus' business, Connexus undertakes significant and substantial steps to protect its information and processes.

16. Connexus maintains its confidential files—including its customer lists, client files, and other proprietary documents—on secure on-premise and cloud-based servers. Electronic access to the contents of Connexus' file servers is restricted, with the servers requiring Active Directory level authentication. Additionally, access to Connexus' fileservers is logged, allowing Connexus to verify that its files are being utilized by authorized users. Physical access to Connexus' central file servers is also restricted, as these servers are located off-site, within the custody of a third-party vendor. Connexus maintains strict confidentiality agreements with this vendor, tightly controlling physical access to these servers.

17. To secure its valuable information, Connexus password-protects the laptops issued to its employees, providing each user with a unique login and password. Each user account may have different access permissions, depending on the user's requirements, ensuring that employees have access only to the types of information that are necessary to perform their individual job functions.

18. Additionally, as part of its efforts to maintain the security of its proprietary information, Connexus has a policy to maintain an inventory of its equipment, including the computers issued to its employees. When an employee is terminated or terminates his or her employment, Connexus' policy is for the IT department to confiscate the computer, offer its access to the employee's manager, archive all relevant files and programs to back folders on Connexus' servers, and either reformat it (thereby removing all information) or remove all information for reuse or recycle.

## II. Cope Agreed to Maintain the Confidentiality of Connexus' Information and Only Use Connexus' Information to Support Connexus

19. In addition to Connexus' electronic and physical safeguards for its information, it also maintains strict written policies and procedures with respect to the use of Connexus' information. For example, its Employee Handbook details the treatment of and access to confidential Connexus information.

20. Section 3.12 of the Employee Handbook sets forth policies governing "Proprietary Information And Confidentiality," and states:

> You acknowledge that as a result of your employment with Connexus you will have access to and be entrusted with confidential information relating to, among other things, the activities, business operations, customers and suppliers of the Company, the disclosure of which to competitors of the Company or the general public could be highly detrimental to the interests of the Company. Such information includes, but is not limited to, trade secrets, know-how, marketing plans and techniques, financial data, customer/client lists, software and information relating to employees, suppliers and persons in a contractual relationship with the Company. Accordingly, you agree that during your employment with the Company and at any time thereafter, not to disclose any such confidential information to any person or entity, nor shall you use such information for any purpose whatsoever, other than in fulfilling your duties to the Company.

21. Cope reviewed and signed the Employee Handbook on June 25, 2014.

## III. Cope Owed Connexus Duties of Confidentiality and Good Faith and Fair Dealing

22. Independent of any contractual duties to her employer, Cope owed a duty of confidentiality and good faith and fair dealing to Connexus. In her role as an agent and employee, Cope owed a duty and obligation to act in Connexus' interest.

23. In her role, Cope also owed Connexus a duty not to usurp Connexus' business opportunities, which would include relationships with clients and customers, not to use Connexus confidential and proprietary information in furtherance of a competitor's business, and not to use Connexus' confidential and proprietary information for her own gain.

24.     Cope was employed by Lacey Harmer prior to its acquisition and eventual consolidation to Connexus. Cope continued employment as Operations Manager and then as Procurement Manager at Connexus until her resignation from Connexus on July 8, 2022. Overall, she was employed by Lacey Harmer and Connexus (collectively "Connexus") for thirty-four (34) years.

25.     During Cope's tenure with Connexus, she had complete access to Connexus' proprietary information, including customer information and pricing, vendor lists, product manufacturing information, customer quotes, sales information, and Connexus documents. Cope worked directly with Connexus' largest clients and maintained those relationships on behalf of Connexus, including her current employer, Pacific Industries.

26.     Cope signed and acknowledged the Employee Handbook on June 25, 2014 thereby committing to safeguard Connexus' information and to use it only in furtherance of her position with Connexus.

27.     On or around August 15, 2022, Cope sent an email to her current employer encouraging Pacific Industries to solicit one of Connexus' long-term and biggest clients, USNR. In this e-mail, Cope uses her signature block from Connexus, but utilizes her new email address from her current employer, Pacific Industries.

28.     Pacific Industries is a company providing power transmission components throughout North America with a principal place of business in Tualatin, Oregon, County of Clackamas. Pacific Industries has a small market share and relied on purchases from Connexus to fulfill its orders.

## CLAIM I
**(Violation of the Economic Espionage Act, as Amended by the Defend Trade Secrets Act)**

29.     Connexus realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

30. During and following her employment with Connexus, Cope misappropriated Connexus' trade secrets related to products, services, and clients used in and intended for use in interstate commerce.

31. Cope misappropriated those trade secrets and have received, possessed, and benefitted from them, knowing such trade secrets were obtained without authorization. The information that the Cope misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by the Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

32. Connexus took reasonable efforts to maintain the secrecy of its information, including training, limiting access, and password protection.

33. Cope's misappropriation of Connexus' trade secrets was willful and malicious. Connexus is thus entitled to its reasonable attorneys' fees, and to exemplary damages in amount in and up to twice the damages awarded, pursuant to 18 U.S.C. § 1836.

34. Connexus does not have a speedy or adequate remedy at law to redress Cope's misappropriation of trade secrets. Accordingly, Connexus is entitled to injunctive relief restraining and enjoining Defendant from soliciting Connexus' clients, potential clients, vendors, employees, and suppliers, to the extent such solicitation is enabled by or based on misappropriation of Connexus' trade secrets and other confidential information.

35. As a direct consequence of Cope's misappropriation, Cope has caused economic harm to Connexus in the form of lost profits, and Connexus is entitled to damages in the approximate amount of $2,300,000.00 or in an amount to be proven at trial.

## CLAIM II
**(Breach of Employee Handbook)**

36. Connexus realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

37. Cope signed a Handbook Acknowledgement from the 2014 Employee Handbook.

38. Cope received adequate consideration to support the Handbook Acknowledgement, as it was a condition of her employment.

39. Cope materially breached this agreement by obtaining and using Connexus' proprietary and confidential information, including Connexus' customer information and pricing, customer quotes, product manufacturing information and Connexus documents in furtherance of her own career and to the detriment of Connexus' business.

40. Connexus does not have a speedy or adequate remedy at law to redress Cope's misappropriation of trade secrets. Accordingly, Connexus is entitled to injunctive relief restraining and enjoining Defendant from soliciting Connexus' clients, potential clients, vendors, employees, and suppliers, to the extent such solicitation is enabled by or based on misappropriation of Connexus' trade secrets and other confidential information.

41. Additionally, as a direct consequence of Cope's breach, Connexus has sustained economic damages for Cope's breach for $2,300,000.00 or in an amount to be proven at trial.

## CLAIM III
### (Breach of Duty of Confidentiality and Good Faith and Fair Dealings)

42. Connexus realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

43. During her employment with Connexus, Cope owed a duty of confidentiality and good faith and fair dealing to Connexus.

44. During her employment, Cope breached these duties at least by stealing Connexus' trade secrets and other confidential and proprietary information, including Connexus' customer information and pricing, customer quotes, product manufacturing information, Connexus documents in furtherance of her own interests and to the detriment of Connexus' business.

45. Additionally, as a result of Cope's breach of the duty of confidentiality and covenant of good faith and fair dealing, Connexus has sustained significant actual and compensatory damages for $2,300,000.00 or in an amount to be proven at trial.

///

## CLAIM IV
### (Conversion)

46. Connexus realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

47. Cope intentionally exercised dominion or control over or dispossessed, used, deleted, or intermeddled with Connexus' chattel, including but not limited to, Connexus' customer information and pricing, customer quotes, product manufacturing information, Connexus documents, and other confidential and proprietary client information for her benefit. Cope may have also converted and disposed, used, deleted, or intermeddled with other items that will be discovered after commencement of litigation through the discovery process.

48. Additionally, as a result of Cope's conversion of Connexus' chattel, Connexus has sustained significant actual and compensatory damages for $2,300,000.00 or in an amount to be proven at trial.

WHEREFORE, Connexus prays for a judgment and decree in its favor and against Cope as follows:

a) Permanent orders, and possible preliminary relief, requiring Defendant to deliver to Connexus all documents, data, and other property of Connexus, as well as all hard drives, flash drives, SD cards, cell phones, and other external drives or storage media used by any defendant that contain any of Connexus' documents, data or other property (collectively "Misappropriated ESI"). Defendant shall not take any action to delete, destroy, or move any documents, data, or other property of Connexus in Misappropriated ESI, and shall not director permit anyone to do so on their behalf;
b) Permanent orders, and possible preliminary relief, restraining and enjoining Defendant from soliciting Connexus' clients, potential clients, vendors, employees, and suppliers, to the extent such solicitation is enabled by or based on misappropriation of Connexus' trade secrets and other confidential information;
c) Permanent orders, and possible preliminary relief, restraining and enjoining Defendant from otherwise possessing, using or disclosing Connexus' trade secrets and other confidential information misappropriated by Defendant;

d) Judgment against Defendant for damages for $2,300,000.00 or in an amount to be proven at trial;
e) Judgment against Defendant for double damages for their willful and malicious misappropriation of Connexus' trade secrets pursuant to 18 U.S.C. § 1836;
f) Judgment against Defendant in the amount of Connexus' reasonable attorneys' fees and costs as authorized by 18 U.S.C. § 1836, including prevailing party fees, prejudgment and post-judgment interest; and
g) Such other and further relief as this Court deem just and equitable.

DATED: October 7, 2022

JJH LAW, P.C.
*/s/ Joseph J. Haddad*
Joseph J. Haddad, OSB No. 002696
joseph@jjh-law.com